In re Ashraf Fouad HASSAN, Irina Hassan, Debtors.

Christopher J. Redmond, Trustee, Kansas Express International, Inc., Plaintiffs,

v.

Ashraf Fouad Hassan, Bilal Said, International Football Club, Inc., Overland Park Sports Complex, LLC, Terra Sports Group, LLC, Terra Venture, Inc., Terra Venture Investments, LLC, Analytical Management Laboratories, Inc., Mark Murphy, The Murphy Law Firm, P.A., Defendants,

and

Final Touch, Inc., Kansas City Limousine, Inc. and Budget Limousine, Al Moser, Diane Moser, Defendants & Third–Party Plaintiffs,

v.

Steven G. Lord, Broadmoor Capital, Inc., Broadmoor Capital Consulting, LLC, Third–Party Defendants.

Bankruptcy No. 04–20332–7.
Adversary No. 05–6215.

United States Bankruptcy Court, D. Kansas.

Jan. 23, 2007.

2

See also 375 B.R. 637, 2006 WL 4764475.

Frederick H. Riesmeyer, II, Spradley & Riesmeyer, Kansas City, MO, for Debtors.

Christopher J. Redmond, Leawood, KS, trustee/Plaintiff.

Lisa A. Brunner, Scottie S. Kleypas, Husch & Eppenberger, LLC, Kansas City, MO, for trustee.

Eric J. Howe, Kevin M. Bright, Mark T. Benedict, Scottie S. Kleypas, Husch & Eppenberger, LLC, Kansas City, MO, for Plaintiff.

Diane Moser, Pro Se.

Al Moser, Pro Se.

Kansas City Limousine, Inc. and Budget Limousine, Pro Se.

Frederick H. Riesmeyer, II, Spradley & Riesmeyer, Kansas City, MO, Richard C. Wallace, Evans & Mullinix, P.A., Shawnee, KS, for Defendants/Counter–Defendants/Cross Defendants.

Sharon L. Stolte, Stinson Morrison & Hecker L.L.P., Overland Park, KS, George D. Halper, McAnany, Van Cleave & Phillips, P.A., Roeland Park, KS, for Defendants.

John J. Cruciani, Blackwell Sanders Peper Martin LLP, Kansas City, MO, for Cross Defendants.

## RECOMMENDATION TO THE DISTRICT COURT TO GRANT THE MOSERS' MOTION TO WITHDRAW THE REFERENCE OF THIS ADVERSARY PROCEEDING FOR PURPOSES OF TRIAL, BUT TO DENY IT FOR PRETRIAL MATTERS

DALE L. SOMERS, Bankruptcy Judge.

This proceeding is before the Court on a motion by four of the defendants to withdraw the reference of the proceeding and immediately transfer it to the District Court, based on their asserted right to a jury trial on claims made against them, as a well as on claims they are making. The motion was filed by defendants Al Moser, Diane Moser, Final Touch, Inc., and Kansas City Limousine, Inc. and Budget Limousine (collectively, "the Mosers"), all of whom appear by counsel Laurence M. Frazen and Tammee E. McVey. The Plaintiff–Trustee [1] initially appeared by counsel

---

1. Technically, the Trustee is acting both as the trustee of the Debtors' bankruptcy estate and

Kasey A. Rogg, Kevin M. Bright, and Eric J. Howe of Husch & Eppenberger, LLC, but Trustee Christopher J. Redmond of the same firm later entered his appearance as an attorney for the Trustee as well, and Mr. Rogg and Mr. Howe withdrew. Another member of that firm, Lisa A. Brunner, is also listed on the Trustee's objection to this effort to withdraw reference. None of the other defendants or the third-party defendants has filed a response to the motion. The Court has previously recommended that the District Court grant a motion to withdraw reference that was filed by two of the other defendants. The Court has reviewed the relevant materials and is now ready to rule on the Mosers' motion.

## FACTS

### 1. Historical facts alleged by the Trustee and by the Mosers.

The Court's resolution of this dispute is governed by the allegations of the Trustee's complaint, and the Mosers' counter-claims, cross-claims, and third-party claims. For purposes of determining the jury trial rights asserted in the motion, it does not matter whether the allegations are true or not.

When the Debtors filed a Chapter 7 bankruptcy petition in February 2004, they owned all the stock of Kansas Express International, Inc. ("Kansas Express"), which became property of their bankruptcy estate. In their bankruptcy schedules, they reported the corporation was worthless. According to the Mosers, Debtor Ashraf Hassan ("Debtor") had listed the corporation for sale with a broker in 2003, but it did not sell. The Debtor then became involved in an entity known as Inter-

national Football Club ("IFC"), along with co-defendant Bilal Said. They allegedly hired Steven Lord and one or both of his companies, Broadmoor Capital, Inc., and Broadmoor Capital Consulting, LLC, to raise capital for IFC. The Debtor told Lord he could sell Kansas Express to raise money, and Lord agreed to help him do that as part of the larger IFC project.

The Trustee and the Mosers allege that after the Debtor filed for bankruptcy, he agreed in May 2004 to sell the stock of Kansas Express to Al Moser for $550,000 ("the First Sale"). The Mosers contend the Debtor, along with Lord and his companies, provided a variety of false information about Kansas Express in order to induce Moser to buy the corporation. They claim the Debtor continued to add to the false information as the transaction progressed. The Debtor allegedly also failed to disclose that he had filed for bankruptcy and had reported the corporation to be worthless. The Mosers claim Lord referred Moser and the Debtor to attorney Mark Murphy and his firm, the Murphy Law Firm, P.A., who agreed to prepare the documents necessary to complete the sale. Murphy had Moser, his wife, and the Debtor (personally and as president of Kansas Express) sign an engagement letter. By that time, Murphy had allegedly been contacted about working for the Debtor and IFC, knew Lord was trying to raise money for IFC, and knew the Debtor wanted to sell Kansas Express to raise capital for IFC, but Murphy failed to disclose these facts to the Mosers.

During June 2004, Murphy allegedly prepared four drafts of a stockholder

as the owner of the stock of Kansas Express International, Inc., which became property of the estate when the Debtors filed their bankruptcy petition. But since he always advocates a single position in both capacities, the

Court will simply refer to him as "the Trustee," no matter which capacity might be relevant to the discussion at the moment, in order to make this recommendation easier to follow.

8

agreement for IFC that were given to the Debtor and to Said. By the end of June, after the Mosers had paid some of the First Sale price, Said estimated he and the Debtor had each contributed about $125,000 to IFC.

On July 1 or 2, a few days before the First Sale was scheduled to close, Moser learned of the Debtor's bankruptcy case and contacted the Debtor about it. The Debtor told him the bankruptcy was a personal matter and did not concern the business. Moser then contacted Murphy about the bankruptcy. Both the Trustee and the Mosers contend Murphy accessed the Court's electronic records and obtained information about the Debtor's case. The Mosers allege Murphy told them their "only option" was to go ahead and buy Kansas Express. The agreement for the First Sale was then allegedly substantially modified so it appeared to be a sale of the Debtor's postpetition services, rather than the corporation's stock. The Trustee refers to the modified agreement as "the False Agreement," while the Mosers call it "the Revised Agreement." The Court will refer to it as "the Revised First Sale Agreement" and, for ease of reference, will also use that phrase to cover all the earlier stages of the First Sale transaction. The parties signed the Revised First Sale Agreement and the Mosers paid more of the sale price.

The Mosers allege Murphy has testified he would advise an "independent client" not to buy a business like the one the Debtor was selling, and claim he never gave them such advice. Murphy has testified, they add, that he did not believe the Kansas Express assets being sold were as valuable as the Debtor was claiming, but they allege he never told them that. After the First Sale began to fall apart, the Mosers add, Murphy had private conversa-

tions with the Debtor about the deal, even though he was still representing them.

The Trustee alleges that Murphy knew the Revised First Sale Agreement would be provided to the Trustee, and intended for him to rely on it to conclude the First Sale did not involve property of the Debtor's bankruptcy estate. Without disclosing the existence of the original agreement for the sale of the Kansas Express stock, the Debtor allegedly provided his bankruptcy attorney with a copy of the Revised First Sale Agreement and asked him to give it to the Trustee, which the attorney did. The Trustee claims the Debtor did this in an effort to mislead the Trustee about the true nature of the transaction.

Within a few weeks of the First Sale, the Mosers contend they discovered the Debtor had given them much false and misleading information about Kansas Express, its financial situation, and the profitability of its business. They tried to rescind the Revised First Sale Agreement and demanded their money (around $300,000) back. At first, they contend, the Debtor refused to rescind the sale, but he soon resumed operating the Kansas Express business and otherwise acted as if the sale had been rescinded. He never returned any of their money, though.

In February 2005, the Debtor allegedly received $86,000 from another buyer in a second sale of Kansas Express or its assets ("the Second Sale"). The Trustee and the Mosers claim Murphy participated in or facilitated the Second Sale. They do not know what became of the proceeds of this sale.

The Debtor allegedly invested a significant portion of the proceeds of the First Sale in IFC, and helped IFC buy some land in Johnson County, Kansas. Both Said and IFC allegedly knew the source of those proceeds and, according to the Trustee, knew the proceeds belonged to the

Debtors' bankruptcy estate. The Mosers contend Said and IFC knew much of the money the Debtor was investing in IFC was proceeds from the First Sale.

Said and IFC allegedly tried to conceal from the Trustee their association with the Debtor and their receipt of the proceeds of the First Sale. According to the Trustee, Said used various other entities, defendants Overland Park Sports Group, LLC, Terra Sports Group, LLC, Terra Venture, Inc., Terra Venture Investments, LLC, and Analytical Management Laboratories, Inc., as facades for his business operations. The Trustee and the Mosers claim these entities are Said's alter egos, whose separate existence should be disregarded to prevent fraud or injustice. The Debtor or Said, or both of them, the Trustee adds, used these entities to try to keep the Debtors' bankruptcy estate from obtaining any of the proceeds of the First Sale. The Mosers also allege the Debtor, Said, and IFC used the entities to hide the money.

**2. Facts about this proceeding and a related state court lawsuit**

In December 2005, the Trustee commenced this adversary proceeding against the Debtor, IFC, Murphy, Murphy's law firm, Said, and Said's alleged alter egos, seeking, among other things, to recover the proceeds of the Debtor's sales of Kansas Express. In their answer, Murphy and his firm demanded a jury trial, but did not express any consent to have the bankruptcy judge conduct the trial. Four months after answering the complaint, they filed a motion asking the District

Court to withdraw the reference of the proceeding to this Court because of their asserted right to jury trial. Later, they filed a second motion to withdraw reference, essentially identical to the first.

Meanwhile, in March 2006, the Mosers commenced a suit in a Kansas state court, seeking, among other things, to recover the money they paid for Kansas Express in the First Sale. On May 17, 2006, the Mosers amended their petition to add Murphy and his law firm as defendants in that suit. A short time later, Murphy filed a motion in the Trustee's suit seeking to add the Mosers as defendants, which this Court ultimately granted. The Trustee dismissed some of the counts of his complaint, and then filed an amended complaint adding the Mosers.[2] They obtained an extension of time, and then filed a timely response to the complaint on December 11, 2006.

On December 12, 2006, the Court issued a recommendation that the District Court grant Murphy and his law firm's motions to withdraw reference, concluding they had a right to jury trial on the four claims they believed the Trustee was asserting against them. However, the Court indicated it would continue to handle pretrial matters until the District Court rules on the motion or directs otherwise.

**3. Claims asserted in the Trustee's amended complaint**

In the amended complaint, the Trustee asserts twelve claims[3] for relief, but the Mosers consider only seven of the claims to seek relief against them. The relevant ones are identified as Count I, Count II,

---

**2.** The Trustee identified one of Al Moser's corporations by the unconventional name of "Kansas City Limousine, Inc. and Budget Limousine," and the Mosers' answer admitted the paragraph giving that name. They later varied the name somewhat, though, using "Kansas City Limousine, Inc.; Budget Limousine" and just "Kansas City Limousine, Inc."

**3.** The counts are identified by Roman numerals, but two of them are identified as Count VIII. As a result, the last three counts are identified as Counts IX, X, and XI, even though they are the tenth, eleventh, and twelfth counts.

10

Count III, Count IV. Count VIII,[4] Count IX, and Count XI. In Count I, the Trustee seeks an order under § 549(a) of the Bankruptcy Code avoiding the unauthorized postpetition transfer of the money the Mosers paid for Kansas Express, which he claims was proceeds from property of the bankruptcy estate. In Count II, the Trustee seeks under § 550(a)(1) of the Bankruptcy Code to recover the transfer avoided under Count I. In Count III, the Trustee seeks an order under § 502(d) of the Code disallowing any claims any of the defendants have filed against the bankruptcy estate because they have not paid the Trustee the amount they are liable for under Count II. In Count IV, the Trustee seeks an order under § 542 of the Code requiring all the defendants to turn over to him and to account for property of the estate that they possess, or the value of such property. In Count VIII, the Trustee alleges all the defendants converted property of the bankruptcy estate by exercising dominion and control over Kansas Express, and seeks to recover damages proximately caused by that conversion. In Count IX, the Trustee claims all the defendants knew or should have known that the Debtor was a trustee of Kansas Express, and seeks the imposition of a constructive trust on Kansas Express and any proceeds of the corporation that they might possess, and an order requiring them to surrender to him and account for all property subject to that constructive trust. In Count XI, the Trustee asks "[a]s set forth in Rule 7008(b) of the Rules of Bankruptcy Procedure" for an award of the attorney fees and expenses he has incurred in prosecuting this adversary proceeding.

### 4. Claims asserted in the Mosers' response to the Trustee's complaint

In their response to the Trustee's complaint, the Mosers not only answer the Trustee's claims, but also assert a variety of their own claims for relief. They assert two counterclaims against the Trustee. First, they alleged that because of the Debtor's fraudulent misrepresentations and omissions, a constructive trust in their favor should be imposed on all the money they paid to the Debtor in the First Sale. This constructive trust, they contend, is superior to the Trustee's interest in the proceeds of the First Sale. Second, the Mosers seek a judgment declaring that they properly rescinded the Revised First Sale Agreement, and properly tendered the business back to the Debtor, so they are entitled to restitution or reimbursement of all the money they paid him and to recover damages as well. They add that their rescission, together with the fraud perpetrated against them, gives them superior rights to the money they paid. They are also asserting this claim against all the other defendants.

The Mosers also make a number of other cross-claims and third-party claims. Some of these are combined cross-claims and third-party claims. A few of the combined claims also include counterclaims against Kansas Express, although the main thrust of these combined claims is against the other parties.

Four of the cross-claims the Mosers make are against only the Debtor, seeking to recover the money the Mosers paid him in the First Sale, along with other damages. In Count I, they allege the Debtor fraudulently induced them to enter into the Revised First Sale Agreement, and seek rescission of the agreement. In Count II, they ask for a declaratory judgment that they properly rescinded the Revised First Sale Agreement. In Count III, they allege the Debtor made fraudulent

4. The second Count VIII is the one involved here.

misrepresentations in connection with the First Sale. In Count IV, they claim he committed fraud by silence in connection with the First Sale.

The Mosers' next three cross-claims are made against Murphy and his law firm. In Count V, they seek damages for Murphy's alleged legal malpractice based on (1) his advice to them about the First Sale, particularly after the discovery of the Debtor's bankruptcy case, (2) his preparation of the Revised First Sale Agreement, and (3) his alleged assistance with the Second Sale. In Count VI, they seek damages for Murphy's alleged breach of fiduciary duties to them based on (1) his failure to disclose conflicts involved in his concurrent representation of the Mosers, the Debtor, and IFC, and his prior relationship with Lord; (2) his meeting with the Debtor and giving him advice detrimental to the Mosers without telling them about this activity; (3) his failure to withdraw from representing the Mosers and others when conflicts arose; (4) his failure to fully advise the Mosers about the new conflicts created by the Debtor's bankruptcy case; and (5) his helping with the Second Sale without notice to or the consent of the Mosers. In Count VII, they seek damages for Murphy's alleged breach of contract based on his failure to properly advise them about the First Sale.

The Mosers' next two claims are made against all the other defendants, as well as plaintiff Kansas Express, and third-party defendant Lord and his companies. In Count VIII, the Mosers seek damages for conversion of the money they paid in the First Sale. In Count IX, they seek imposition of a constructive trust on the money they paid, and an order requiring the return of the money to them.

The Mosers' tenth claim, Count X, is a cross-claim against the Debtor and a third-party claim against Lord and his companies, seeking damages for negligent misrepresentation based on allegedly false information supplied to the Mosers in connection with the First Sale. Their last claim, Count XI, is a cross-claim against the Debtor, IFC, Murphy, and his law firm, and a third-party claim against Lord and his companies, seeking damages for an alleged civil conspiracy to defraud the Mosers by convincing them to buy Kansas Express.

In January 2007, most of the parties filed answers to the Mosers' claims. Murphy and his law firm filed a joint answer; they did not respond to the demand for a jury trial, but have already made their own demand for one. Defendants Said, IFC, Analytical Management Laboratories, Inc, and Overland Park Sports Complex, LLC, filed a joint answer, making no response to the demand for a jury trial. Third-party defendants Lord and his companies filed a joint answer, but did not respond to the jury trial demand. Defendants Terra Venture Investments, LLC, Terra Venture, Inc., and Terra Sports Group, LLC, filed a joint answer, and denied that the Mosers are entitled to a jury trial. The Trustee obtained an extension of time until February 12, 2007, to respond to the Mosers' counterclaims, and has not yet filed his response.

## 5. The Mosers' motion to withdraw reference

In their response to the Trustee's complaint, the Mosers demanded a jury trial on all the Trustee's claims and on the various claims they asserted. On the same day they filed their response, they filed a motion to immediately withdraw the reference of this proceeding to this Court declaring in it that they had demanded a jury trial and did not consent to this Court conducting the trial. The Trustee opposes the motion, arguing that a number of his

claims do not carry a right to jury trial, and that this Court should handle pretrial matters in the proceeding even if a jury trial must eventually be conducted by the District Court. None of the other parties has responded to the motion, not even the group that denied the Mosers were entitled to a jury trial.

## DISCUSSION

### A. A right to jury trial and lack of consent to trial in the bankruptcy court constitutes "cause" for withdrawal of reference.

■ The Mosers' motion to withdraw reference arises under 28 U.S.C.A. § 157(d), which provides in relevant part: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." Many courts have held the bankruptcy courts' lack of authority to conduct a jury trial without the parties' consent qualifies as "cause" to withdraw the reference,[5] although the matter will often be left with the bankruptcy court until it is ready for trial.[6] Furthermore, District of Kansas Local Rule 83.8.13(a) declares that: "A district judge shall conduct jury trials in all bankruptcy cases and proceedings in which a party has a right to trial by jury, a jury is timely demanded, and no statement of consent to jury trial before a bankruptcy judge has been filed." Whether the Mosers' motion should be granted, then, depends on whether they have a right to a jury trial on the claims the Trustee is making against them, and on the claims they are making against him and others.

### B. General guidelines for determining whether a jury trial right exists.

■ The jury trial right that the Seventh Amendment preserves depends on the now-historical distinction between legal and equitable claims.[7] A leading treatise on federal civil procedure calls distinguishing between matters that were triable at law and those that were triable in equity in 1791, when the Amendment was adopted, "one of the most perplexing questions of trial administration."[8] Because the English law and equity systems overlapped a great deal in 1791, the line dividing law and equity was not very clear then.[9] And since the law and equity jurisdictions of the federal courts were merged in 1938 with the adoption of the Federal Rules of Civil Procedure, leaving the jury trial right as the only area where the distinction remains important,[10] distinguishing historically legal claims from equitable ones becomes more and more difficult as time goes by. In addition, because equity was always a supplemental system that acted only when the law courts were not able to provide an adequate remedy, the claims to which the jury trial right attaches have expanded over the years as common law procedures and remedies have been broadened.[11] To help protect the jury trial right, where a legal claim and an equitable

---

5. See, e.g., Disbursing Agent of Murray F. Hardesty Estate v. Severson (In re Hardesty), 190 B.R. 653, 655 (D.Kan.1995); Lars, Inc., v. Taber Partners (In re Lars, Inc.), 290 B.R. 467 (D.P.R.2003).

6. See, e.g., Official Committee v. Lay (In re Enron Corp.), 295 B.R. 21, 27–28 (S.D.N.Y. 2003).

7. 9 Wright & Miller, Federal Practice & Pro.: Civil 2d, § 2301 at 10–12 & § 2302 at 17–18 (1995).

8. Id. § 2302 at 18.

9. Id. at 18–19.

10. Id. at 19.

11. Id. § 2302.1 at 24–25.

claim that are asserted in the same case have a factual issue in common, the legal claim must be tried to a jury before the equitable claim is decided so that principles of former adjudication will not bar the jury from deciding the issue.[12]

■■ In *Granfinanciera v. Nordberg*,[13] the Supreme Court considered whether defendants who were sued by a bankruptcy trustee to recover prepetition transfers alleged to have been fraudulent were entitled to a jury trial. The Court noted that the Seventh Amendment not only preserves the jury trial right for suits to determine rights that would have been brought in the law, rather than equity, courts of England in 1791, but also extends it to actions brought to enforce statutory rights that are analogous to common-law causes of action that would ordinarily have been decided at that time by those law courts.[14] Then the Court summarized its approach to the question before it:

> The form of our analysis is familiar. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Tull v. United States*, 481 U.S. 412, 417–18[, 107 S.Ct. 1831, 95 L.Ed.2d 365] (1987) (citations omitted). The second stage of this analysis is more important than the first. *Id.* at 421[, 107 S.Ct. 1831]. If, on balance, these two factors indicate that a party is enti-

tled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.[15]

Only legal claims, or causes of action, carry a right to jury trial and, under *Granfinanciera*, the first two steps in deciding whether a jury trial right attaches are to determine: (1) whether, when the Seventh Amendment was adopted, the cause of action would have been considered to be legal, rather than equitable, or is a new cause of action analogous to one then considered to be legal; and (2) whether the remedy sought is legal, rather than equitable. If those steps indicate a jury trial right attaches and the cause of action is one Congress created by statute, a third step is required if Congress has assigned the authority to resolve the cause of action to a court or other decision-maker that does not use juries and has not been established under Article III of the Constitution. This final step is to decide whether *the Constitution permits Congress to assign the claim to that decision-maker.*

■ The third part of the *Granfinanciera* analysis was necessary because under the applicable statutes and the unusual procedural posture of the case, Congress had assigned jurisdiction over fraudulent conveyance actions to bankruptcy courts but not authorized those courts to conduct jury trials.[16] Under the statutes and rules applicable to the Trustee's adversary pro-

---

**12.** *See* 9 Wright & Miller, *Federal Practice & Pro.: Civil 2d*, § 2302.1 at 25–29 (analyzing Supreme Court's decision in *Beacon Theatres, Inc., v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)).

**13.** *492 U.S. 33*, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

**14.** *Id.* at 40–42, 109 S.Ct. 2782.

**15.** *Id.* at 42, 109 S.Ct. 2782 (footnote omitted).

**16.** *See id.* at 40, n. 3, 109 S.Ct. 2782 (noting lack of statutory authority for the bankruptcy judge to conduct jury trial in the case) & at 49–50 (noting Congress had given non-Article III bankruptcy courts jurisdiction over fraudulent conveyance actions).

14

ceeding before this Court, though, no party with a Seventh Amendment right to a jury trial on an issue can be forced to litigate that issue in a bench trial before this Court. For the issue to be tried by this Court, the party must consent to have the jury trial held here; otherwise, the jury trial must be held by a district judge.[17]

The Court previously applied *Granfinanciera* to the motions to withdraw reference that Murphy and his law firm filed, recommending that the District Court withdraw reference of Counts V, VI, VIII, and XI of the Trustee's complaint. The Mosers' motion also addresses Counts VIII and XI, but not Counts V and VI. Here, the Court will analyze all seven of the Trustee's claims that are addressed by the Mosers' motion.

### C. Are the Trustee's claims against the Mosers legal ones?

#### 1. Trustee's Counts I–IV—Claims under the Bankruptcy Code

The first four Counts in the Trustee's complaint are based on provisions in the Bankruptcy Code, §§ 549, 550, 502, and 542. Count I seeks under § 549 to avoid one or more unauthorized postpetition transfers of property of the bankruptcy estate. Count II seeks under § 550 to recover any transfers avoided under Count I. Count III seeks disallowance of claims against the bankruptcy estate filed by any defendant who is liable under Count II but has failed to satisfy that liability. Count IV seeks to force any defendant who possesses property of the bankruptcy estate to turn it over to the Trustee. The Tenth Circuit has decided a case that guides the Court's consideration of the jury trial question for these four counts.

In *Jobin v. Youth Benefits Unlimited, Inc. (In re M & L Business Machine Co., Inc.)*, a Chapter 11 trustee sued to recover an unauthorized postpetition transfer the debtor-in-possession had made with a cashier's check.[18] The Tenth Circuit considered and rejected the check recipient's assertion that *Granfinanciera* meant it was entitled to a jury trial on the § 549 claim, ruling:

We conclude that enforcement of Section 549, a provision clearly designed to protect the bankruptcy estate following its inception, is a procedure which is equitable in nature. [Citations omitted.] Moreover, through the Bankruptcy Act Congress has established that the Bankruptcy Court is the tribunal in which the protection of that estate is accomplished, and in which disputes may be resolved by way of summary proceedings. There is no underlying legal claim in this case, such as one to recover an alleged fraudulent conveyance. *See Granfinanciera* 492 U.S. at 64[, 109 S.Ct. 2782].[19]

Since Count I of the Trustee's complaint is also under 549, the Circuit's ruling clearly mandates a conclusion that the count carries no right to a jury trial. The Court is convinced that Counts II, III, and IV are similar efforts to protect the estate that was created when the Debtors filed their bankruptcy petition, so they likewise carry no jury trial right. The Court recommends the District Court conclude these four counts of the Trustee's complaint are asserting equitable claims.

#### 2. Trustee's Count VIII—Conversion of property of the bankruptcy estate.

In Count VIII, the Trustee alleges all the defendants exercised control over

17. *See* 28 U.S.C.A. § 157(e); Bankruptcy Rule 9015(b); D. Kan. Local R. 83.8.13.

18. 59 F.3d 1078, 1079–80 (10th Cir.1995).

19. 59 F.3d at 1082.

Kansas Express and dealt with it as if it were not property of the estate, ultimately destroying the corporation's value, and seeks damages for this conversion of property of the estate. In ruling on this count in its recommendation on the withdrawal of reference motions filed by Murphy and his law firm, this Court said:

> The Supreme Court has stated that a claim for conversion of personal property was "unmistakably" an action at law for which the Seventh Amendment gave the parties a jury trial right.[20] The Court recommends that the District Court conclude the right to jury trial attaches to this count of the Trustee's complaint.

While Count VIII might be viewed as serving a protect-the-bankruptcy-estate purpose very similar to Counts I through IV, which the Court concluded earlier carry no jury trial rights, the Court believes this count is different because the Trustee is not seeking to recover the converted property itself, but is only seeking damages for the conversion. The Court further notes that when the Supreme Court said a claim for conversion of personal property was unmistakably an action at law, it appears to have been talking about a claim seeking to recover damages for such a conversion.[21] The Court recommends the District Court conclude this count of the Trustee's complaint is asserting a legal claim.

### 3. Trustee's Count IX—Imposition of constructive trust on property of the bankruptcy estate in the defendants' hands.

In Count IX, the Trustee contends that Kansas Express and the proceeds from its sale were all property of the bankruptcy estate, and that a constructive trust was imposed on the corporation and proceeds as soon as they were converted by any of the defendants. He also contends the proceeds from the sales of Kansas Express that the Debtor wrongfully received were impressed with a constructive trust from the moment he received them, and any of the defendants who subsequently received any of the proceeds from the Debtor knew or should have known that he was violating that trust by giving them those proceeds. Although the Supreme Court's indication that a claim seeking damages for conversion is a legal claim might suggest the Trustee's claim here is similarly a legal one, a constructive trust is an equitable remedy that is imposed to prevent fraud or other injustice.[22] A leading treatise on practice in federal courts declares: "An action seeking to impose a constructive trust is equitable in nature and will not ordinarily give rise to a right to jury trial," unless the action "is essentially one to collect a debt."[23] The Trustee and the bankruptcy estate were not involved in the defendants' alleged dealings with Kansas Express or the proceeds from its sale, so the Trustee's con-

**20.** *Ross v. Bernhard,* 396 U.S. 531, 533, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).

**21.** *Id.*

**22.** *See Healy v. Commissioner of Internal Revenue,* 345 U.S. 278, 282, 73 S.Ct. 671, 97 L.Ed. 1007 (1953) ("A constructive trust is a fiction imposed as an equitable device for achieving justice."); *see also Cousatte v. Lucas,* 35 Kan.App.2d 858, 868–75, 136 P.3d 484 (2006) (discussing requirements for impo-

sition of constructive trust under Kansas law); *In re Leitner,* 236 B.R. 420, 423–25 (Bankr. D.Kan.1999) (concluding constructive trust should be imposed on property debtor obtained with proceeds of fraud, so debtor's interest was limited to bare legal title and creditor held equitable interest that did not become property of bankruptcy estate).

**23.** 8 *Moore's Federal Practice,* § 38.31[2] (Matthew Bender 3d ed.2006).

structive trust claim is not an effort to collect a debt from any of them. Instead, the Trustee is trying to recover specific property through the constructive trust remedy. The Court recommends the District Court conclude this count of the Trustee's complaint is asserting an equitable claim.

#### 4. Trustee's Count XI—Attorney fees.

 In Count XI, the Trustee asks for an award of attorney fees and expenses incurred in prosecuting this suit, citing only Bankruptcy Rule 7008(b) as authority for the claim. Rule 7008(b) provides: "A request for an award of attorney's fees shall be pleaded as a claim in a complaint [or other pleading] as may be appropriate." While this rule specifies how to ask for attorney fees in an adversary proceeding, it does not appear to authorize an award to be made. In *Tuloil, Inc., v. Shahid (In re Shahid)*, the Tenth Circuit Bankruptcy Appellate Panel explained that attorney fees are not generally taxable as costs or recoverable as damages unless authorized by statute or an enforceable contract.[24] The court also stated that while Bankruptcy Rule 7054(b) provides for an award of costs, the adversary rules contain no provision for an award of attorney fees.[25] In *Seimer v. Nangle (In re Nangle)*, the Eighth Circuit Bankruptcy Appellate Panel explained that the general "American Rule" is that the parties to litigation must bear the cost of their own attorney fees unless a statute or contract provides otherwise.[26] The court went on to identify four provisions in the Bankruptcy Code, §§ 506(b), 303(i), 362(h), and 523(d), that authorize awards of attorney fees in certain circumstances, and further identified two limited exceptions to the

American Rule that can also apply in bankruptcy, the common benefit or common fund exception, and the bad faith litigation practices exception (probably governed by Bankruptcy Rule 9011 in bankruptcy matters).[27] In line with this Court's reading of Rule 7008, these decisions suggest that the rule does not provides substantive authority for an award of attorney fees.

The Trustee's failure to specify the substantive basis of his claim for attorney fees makes it impossible to determine whether the claim would have been considered a legal one or an equitable one by the courts of England in 1791. The fact he seeks a monetary award would suggest the claim is a legal one since money damages are a typical legal remedy. Under the circumstances, the Court recommends the District Court conclude this count of the Trustee's complaint is asserting an equitable claim.

#### D. Are the Mosers' counterclaims legal ones?

#### 1. First counterclaim—Constructive trust on money paid in First Sale.

 In their first counterclaim, the Mosers allege a constructive trust should be imposed on all the money they paid the Debtor in the First Sale because of his alleged fraudulent misrepresentations and omissions. As explained above in considering Count VIII of the Trustee's complaint, a claim seeking the imposition of a constructive trust is ordinarily an equitable claim carrying no right to jury trial. Nothing about this claim suggests it is simply an effort to collect a debt. The Court recommends the District Court con-

---

**24.** 254 B.R. 40, 43 (10th Cir. BAP 2000).

**25.** *Id.*

**26.** 281 B.R. 654, 657 (8th Cir. BAP 2002).

**27.** 281 B.R. at 658–59.

clude this counterclaim is asserting an equitable claim.

### 2. Second counterclaim—Rescission of the Revised First Sale Agreement.

■ In their second counterclaim, the Mosers seek a declaratory judgment finding that they properly rescinded the First Sale and properly tendered the business back to the Debtor, so they are entitled to reimbursement of all the money they paid him (a restitution remedy) and to recover damages as well. They want this relief against all the other defendants, as well as against the Trustee. In *McKinney v. Gannett Company, Inc.*, the Tenth Circuit said a party waived his right to a jury trial when he "elected to pursue rescission and waived damages."[28] This indicates the Circuit considers rescission alone to be an equitable claim, but a claim seeking damages as well as rescission to be at least partly a legal one. To the extent the Mosers want rescission of the First Sale and restitution, this Court believes they are asserting an equitable claim. However, to the extent they are seeking damages in addition to rescission and restitution, based on the same factual allegations, they are asserting a legal claim. If there are fact questions that must be resolved in connection with this counterclaim, a jury must resolve those questions before the trial court can resolve the balance of the rescission claim.[29] The Court recommends the District Court conclude the part of the Mosers' second counterclaim seeking damages is asserting a legal claim, but the part seeking rescission and restitution is asserting an equitable one.

### E. Are the Mosers' other cross-claims, third-party claims, and counterclaims legal ones?

### 1. Cross-claims against the Debtor

### a. Mosers' Count I against the Debtor—Rescission of the First Sale because of fraud.

■ In the cross-claim they label as Count I, the Mosers claim (1) they are entitled to rescind the Revised First Sale Agreement with the Debtor because of his material misrepresentations, breaches of warranty, and fraudulent inducements, and (2) they have taken steps to rescind it. They contend their rescission entitles them to the return of the money they paid the Debtor, and to other damages they suffered because of the Debtor's alleged fraud. This cross-claim is very similar to their second counterclaim, and leads to the same conclusion about their jury trial right. Consequently, the Court recommends the District Court conclude the part of this cross-claim seeking rescission and restitution is asserting an equitable claim, while the part seeking additional damages is asserting a legal one.

### b. Mosers' Count II against the Debtor—Declaratory judgment.

■ In the cross-claim they label as Count II, the Mosers ask for a declaratory judgment that they properly rescinded the First Sale and tendered Kansas Express back to the Debtor, and are entitled to have their purchase money returned and

---

**28.** 817 F.2d 659, 673 (10th Cir.1987) (order denying rehearing and rehearing en banc); *see also* 8 *Moore's Federal Practice,* § 38.31[8][a], [b], [c], & [d] (indicating rescission alone is equitable remedy, even if restitution is sought, but portion of claim seeking damages carries jury trial right).

**29.** *See Beacon Theatres, Inc., v. Westover,* 359 U.S. 500, 510, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) (jury must decide fact issues common to legal and equitable claims before trial court decides balance of equitable claim).

to recover additional damages. Like their second counterclaim and their Count I cross-claim, this claim is partly legal and partly equitable. The Court recommends the District Court conclude the part of this cross-claim seeking a declaratory judgment that the Mosers properly rescinded the First Sale and are entitled to the return of the money they paid the Debtor is asserting an equitable claim, but that the part seeking additional damages is asserting a legal one.

### c. Mosers' Count III against the Debtor—Fraudulent misrepresentation.

 In the cross-claim they label as Count III, the Mosers are seeking damages for allegedly false representations the Debtor made in order to convince them to buy Kansas Express. A leading treatise says, "When the only remedy sought for fraud is damages, the action is legal in nature and there is a right to jury trial." [30] The Court recommends the District Court conclude this cross-claim is asserting a legal claim.

### d. Mosers' Count IV against the Debtor-Fraud by silence.

 In the cross-claim they label as Count IV, the Mosers are seeking damages for the Debtor's alleged failure to reveal to them various material facts about the past financial performance of Kansas Express's business. Although fraud by silence or concealment is distinguished from fraud by affirmative false representations in some ways,[31] the Court believes the jury trial right attaches to either type of fraud when the remedy sought is money damages. The Court recommends the District Court conclude this cross-claim is asserting a legal claim.

### 2. Cross-claims against Murphy and his law firm.

### a. Mosers' Count V against Murphy and his law firm—Legal malpractice.

 In the cross-claim they label as Count V, the Mosers are seeking damages for the alleged failure of Murphy and his law firm to exercise ordinary skill and knowledge (that is, negligence) in representing them in the First Sale and in helping with the Second Sale. Claims for damages to a person or property based on torts such as negligence are legal claims.[32] The Court recommends that the District Court conclude this cross-claim is asserting a legal claim.

### b. Mosers' Count VI against Murphy and his law firm—Breach of fiduciary duties.

 In the cross-claim they label as Count VI, the Mosers are seeking damages from Murphy and his law firm for

---

30. 9 Wright & Miller, *Federal Practice & Pro.: Civil, 2d,* § 2311 at 92.

31. *See, e.g., Albers v. Nelson,* 248 Kan. 575, 579, 809 P.2d 1194 (1991) ("Fraudulent misrepresentation includes affirmative acts and misstatements of fact or the concealment of acts or facts which legally or equitably should be revealed."); *Burton v. R.J. Reynolds Tobacco Co.,* 397 F.3d 906, 910–11 (10th Cir.2005) (under Kansas law, nondisclosure becomes fraudulent only when it violates a duty to disclose).

32. *Ross v. Bernhard,* 396 U.S. 531, 533, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709–10, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) (agreeing with portion of concurring opinion, 526 U.S. at 727–30, 119 S.Ct. 1624 (citing *Ross,* among other cases), which concluded tort actions seeking damages are legal claims); 8 *Moore's Federal Practice,* § 38.30[2][a] (Matthew Bender 3d ed.2006).

allegedly breaching in various ways the fiduciary duties and duties of honesty, good faith, fairness, and fidelity imposed on them because of their attorney-client relationship with the Mosers. The Mosers seek compensatory damages for these alleged breaches, not the return of particular money or property they claim Murphy and his law firm have. Although claims for breaching fiduciary duties were traditionally, as a general rule, equitable ones tried in the equity courts, where the remedy sought is compensatory damages, the entire claim is a legal one carrying a jury trial right.[33] The Court recommends the District Court conclude this cross-claim is asserting a legal claim.

### c. Mosers' Count VII against Murphy and his law firm—Breach of contract.

■■■■ In the cross-claim they label as Count VII, the Mosers are seeking damages from Murphy and his law firm for allegedly breaching in various ways the parties' contract. A claim for damages for breach of contract is a legal one triable to a jury.[34] The Court recommends the District Court conclude this cross-claim is asserting a legal claim.

### 3. Claims against co-defendants, third-party defendants, and plaintiff Kansas Express.

### a. Mosers' Count VIII—Conversion.

[25] In the claim they label as Count VIII, the Mosers are seeking damages from all their co-defendants, the third-party defendants, and plaintiff Kansas Express for exercising control over the money the Mosers paid in the First Sale, and converting the money by illegally retaining it. The Court sees nothing to distinguish this claim from the Trustee's Count VIII for conversion. Consequently, the Court recommends the District Court conclude this count is asserting a legal claim.

### b. Mosers' Count IX—Constructive trust.

■■■■ In the claim they label as Count IX, the Mosers are seeking, based on the Debtor's alleged fraud, to have a constructive trust imposed on the money they paid in the First Sale that is being held by any of their co-defendants, the third-party defendants, or plaintiff Kansas Express, and an order requiring them to disgorge the money to the Mosers. This claim is somewhat different from the Trustee's Count IX, which similarly asks to have a constructive trust imposed, because the Mosers were directly involved in the First Sale. However, as stated in discussing the Trustee's claim, a leading treatise on practice in federal courts declares: "An action seeking to impose a constructive trust is equitable in nature and will not ordinarily give rise to a right to jury trial," unless the action "is essentially one to collect a debt." [35] In the case the treatise cites for the stated exception, the government sought to defeat the jury trial rights of former shareholders of a dissolved corporation by relying on equitable trust theories to impose liability on them under a

---

**33.** *Pereira v. Farace*, 413 F.3d 330, 337–41 (2d Cir.2005); *see also Callery v. United States Life Ins. Co.*, 392 F.3d 401, 405–06 (10th Cir.2004) (compensatory money damages for breach of legal duty are classic form of legal relief; equitable restitution limited to situations where money or property can be traced to particular money or property in defendant's hands).

**34.** 9 Wright & Miller, *Federal Practice & Pro.: Civil, 2d*, § 2316 at 125–26; 8 *Moore's Federal Practice*, § 38.30[4].

**35.** 8 *Moore's Federal Practice*, § 38.31[2].

federal statute, but the court rejected that effort because the statute involved, if it was applicable, would make them directly liable for the corporation's unpaid debt to the government without resorting to equitable trust theories.[36] In other words, because the government had a direct claim to collect a debt, the court did not allow it to defeat the former shareholders' right to a jury trial by couching its claim as an indirect one to impose an equitable trust on property they had received from the dissolved corporation. This exception suggests the Mosers should not be able to defeat any jury trial right the Debtor might assert in response to this claim by relying on their constructive trust theory to impose liability on him, since he should be directly liable to them for any fraud they can prove he committed. But it is the Mosers, not the Debtor, who are asking for a jury trial on this claim. Against the other co-defendants, the third-party defendants, and plaintiff Kansas Express, the theory of this count is that they should not be allowed to retain money they received from the Debtor, who in turn fraudulently obtained it from the Mosers, but should be deemed to hold the money in constructive trust for the benefit of the Debtor's victims, the Mosers. Even if no constructive trust can properly be imposed under this count on money the Debtor has, that does not strike the Court as a reason to give the Mosers a jury trial on their constructive trust claim. The Court recommends the District Court conclude this count is asserting an equitable claim.

### 4. Mosers' Count X—Cross-claim and third-party claim for negligent misrepresentation against the Debtor and the third-party defendants.

 In the combined cross-claim and third-party claim they label as Count X, the Mosers are seeking compensatory damages from the Debtor and from Lord and his companies for negligently providing false information about the financial status and profitability of Kansas Express. They also contend the Debtor provided some or all the false information intentionally, not just negligently. As indicated in addressing the Mosers' Count V, claims for damages to a person or property based on torts such as negligence are legal claims.[37] The same is true when money damages are sought for an intentional tort.[38] The Court recommends the District Court conclude this count is asserting a legal claim.

### 5. Mosers' Count XI—Cross-claim and third-party claim for civil conspiracy against the Debtor, IFC, Murphy and his law firm, and the third-party defendants.

 In the combined cross-claim and third-party claim they label as Count XI, the Mosers are seeking compensatory damages from the Debtor, IFC, Murphy and his law firm, and Lord and his companies for an alleged civil conspiracy to defraud the Mosers by concealing the true nature and value of Kansas Express in order to complete the First Sale to get money to invest in IFC. As the Court said in ruling on the motions to withdraw refer-

**36.** *United States v. Higginbotham, Inc.*, 722 F.Supp. 283, 283–85 (N.D.Miss.1989).

**37.** *Ross v. Bernhard*, 396 U.S. 531, 533, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709–10, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) (agreeing with por-

tion of concurring opinion, 526 U.S. at 727–30, 119 S.Ct. 1624 (citing *Ross*, among other cases), which concluded tort actions seeking damages are legal claims); 8 *Moore's Federal Practice*, § 38.30[2][a].

**38.** 8 *Moore's Federal Practice*, § 38.30[1][e][ii].

ence filed by Murphy and his law firm, a claim based on an alleged civil conspiracy is a legal claim.[39] Money damages are usually considered to be a legal remedy.[40] Many years ago, the Supreme Court declared that a claim for damages based on an alleged conspiracy to defraud was a legal one.[41] The Court recommends the District Court conclude this count is asserting a legal claim.

**CONCLUSION**

For these reasons, the Court recommends the District Court conclude the following claims are legal ones on which the Mosers are entitled to a jury trial: (1) the Trustee's Count VIII—conversion of property of the bankruptcy estate; (2) the Trustee's Count XI—attorney fees; (3) the part of the Mosers' second counterclaim seeking damages based on their rescission of the Revised First Sale Agreement; (4) the part of the Mosers' Count I seeking damages in addition to rescission and restitution; (5) the part of the Mosers' Count II seeking damages in addition to a declaratory judgment for rescission and restitution; (6) the Mosers' Count III—fraudulent misrepresentation; (7) the Moser's Count IV—fraud by silence; (8) the Mosers' Count V—legal malpractice; (9) the Mosers' Count VI—breach of fiduciary duties; (10) the Mosers' Count VII—breach of contract; (11) the Mosers' Count VIII—conversion; (12) the Mosers' Count X—negligent misrepresentation; (13) the

Mosers' Count XI—civil conspiracy. The Court recommends the District Court conclude the following claims are equitable ones on which the Mosers have no right to a jury trial: (1) the Trustee's Counts I, II, III, and IV claims under Bankruptcy Code §§ 549, 550, 502, and 542; (2) the Trustee's Count IX—constructive trust; (3) the Mosers' first counterclaim—constructive trust; (4) the part of the Mosers' second counterclaim seeking rescission of the Revised First Sale Agreement and restitution; (4) the part of the Mosers' Count I against the Debtor seeking rescission and restitution; (5) the part of the Mosers' Count II against the Debtor seeking a declaratory judgment for rescission and restitution; and (6) the Mosers' Count IX—constructive trust. Since a jury trial should be held on some of the claims and the Mosers, like Murphy and his law firm before them, do not consent to this Court presiding over such a trial, the District Court must withdraw reference of any jury trial it orders to be held. However, because this Court has the power to handle pretrial matters even if a jury trial will eventually be required, the Court intends to carry on with pretrial matters until the District Court rules on the motions filed by Murphy, his law firm, and the Mosers, or directs otherwise.[42]

As indicated above, the Supreme Court has made clear that the Seventh Amendment jury trial right includes a requirement that any factual issue that is common

---

**39.** *Hays v. Equitex, Inc. (In re RDM Sports Group, Inc.),* 260 B.R. 915, 919 (Bankr. N.D.Ga.2001); *see also Beacon Theatres, Inc., v. Westover,* 359 U.S. 500, 504 512–13, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) (right to jury trial applied to claim for treble damages cause by alleged conspiracy to violate antitrust laws).

**40.** *William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 136 (2d Cir.1991).

**41.** *Curriden v. Middleton,* 232 U.S. 633, 635–36, 34 S.Ct. 458, 58 L.Ed. 765 (1914).

**42.** *See Disbursing Agent v. Severson (In re Hardesty),* 190 B.R. at 656–57 (even if jury trial must be held in district court, district court may decline to withdraw reference until case is trial-ready).

to both legal and equitable claims must be tried to a jury before a court can decide the equitable claims, in order to ensure that issue preclusion does not defeat the jury trial right. Essentially all the claims the Trustee and the Mosers are making here arise from the same alleged transactions, activities, and other facts, so the same evidence will have to be presented in order to try to prove all the claims. Consequently, the Court recommends (as it did in its recommendation on the motions filed by Murphy and his law firm) that the District Court consider trying all the claims, both legal and equitable, in one proceeding. This would save the parties from having to present much of the same evidence more than once, and promote judicial economy as well by having the judge who presides over the jury trial also decide any factual issues that will not be submitted to the jury.